UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAY F. VERMILLION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01674-JPH-KMB |
| | ) |
| TOM FRANCUM, | ) |
| CHARLES HOUCHINS, | ) |
| BROCK TURNEY, | ) |
| JEFF MALOTT, | ) |
| DUANE ALSIP, | ) |
| DUSHAN ZATECKY, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Jay Vermillion, an Indiana prisoner, alleges that several Indiana Department of Correction employees retaliated against him in violation of his First Amendment rights when they removed him from his job in the prison's law library.[1] Currently before the Court are Defendants' motion for summary judgment, dkt. 97, and Mr. Vermillion's motions for the Court to take judicial notice and to strike certain filings. Dkts. 111, 112. For the reasons stated below,

---

[1] In their summary-judgment motion, Defendants also brief the question of whether Mr. Turney and Defendant Jeff Malott violated the First Amendment by refusing to place phone numbers on Mr. Vermillion's approved-caller list. Dkt. 99. But the Court already granted summary judgment to them on that claim because Mr. Vermillion did not exhaust his administrative remedies as to it. Dkt. 57. Thus, the Court does not discuss those claims any further, except to note that the phone-number claim was the only claim Mr. Vermillion asserted against Mr. Malott, so no claims are currently pending against him. *See* dkt. 109 at 30 (Mr. Vermillion conceding that no case or controversy currently exists between him and Mr. Malott).

the Court **grants** Mr. Vermillion's motion to take judicial notice, **denies** his motion to strike, and **grants** Defendants' motion for summary judgment.

## I.
## Mr. Vermillion's Motions

### A. Motion to take judicial notice

Mr. Vermillion asks the Court to take judicial notice of three items he characterizes as "facts that are not subject to reasonable dispute": (1) *Holleman v. Zatecky*, No. 1:14-cv-671-TWP-DML, dkt. 124 (S.D. Ind.); (2) *Paschall v. Coats*, 1:15-cv-621-SEB-MPB (S.D. Ind.); and (3) *Littler v. Martinez*, 2:16-cv-472-JMS-DLP. Dkt. 111. Defendants do not oppose the motion. Mr. Vermillion's motion, dkt. [111], is **granted** insofar as the Court will take judicial notice of filings from those cited that are cited by Mr. Vermillion. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) ("Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned.").

### B. Motion to strike

Mr. Vermillion also asks the Court to strike portions of the declarations of Defendants Houchins, Turney, and Malott that were submitted in support of their motion for summary judgment. Dkt. 112. Specifically, he contends that Defendant Francum's "arguments that he was not involved in Vermillion's termination, and had no knowledge of Vermillion's other legal activities are based solely on information contained in the affidavits of defendants Houchins, Turney, and Malott, who are not qualified to testify as to what Mr. Francum *might* know,

or what he *might* have been involved in." *Id.* at 1 (internal citations omitted). As a result, he argues, "those portions of said affidavits are hearsay and thus inadmissible." *Id.*

But the declarants detail their involvement in an investigation of Mr. Vermillion, state that Mr. Francum did not direct them to conduct the investigation or participate in the investigation, state that they never spoke to Mr. Francum about the investigation, and state that Mr. Francum did not work at Pendleton Correctional Facility at the time of the investigation. Dkts. 98-2, 98-3, 98-4. The declarants thus have personal knowledge of those facts, and their statements are not based on inadmissible hearsay.

Accordingly, Mr. Vermillion's motion to strike, dkt. [112], is **denied**.

## II.
## Factual Background

Because Defendants moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Vermillion and draws all reasonable inferences in his favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Unless otherwise noted, the following facts are undisputed.

### A. The Parties

At all relevant times, Mr. Vermillion was incarcerated at Pendleton Correctional Facility. Vermillion Declaration, Dkt. 110 at 2–3. Defendant Dushan Zatecky was the Superintendent of Pendleton, and Defendant Duane Alsip was an Assistant Superintendent at Pendleton. *Id.* at 5. Defendant Charles Houchins was a Lead Investigator in the Internal Affairs Division at Pendleton and reported

to Superintendent Zatecky. Houchins Declaration, Dkt. 98-2 ¶¶ 2–5. Defendant Brock Turney was an Internal Affairs Investigator at Pendleton. Turney Declaration, Dkt. 98-3 ¶ 3. Defendant Tom Francum worked in technology at the IDOC's Central Office. Dkt. 98-2 ¶ 15; dkt. 98-3 ¶ 17.

### B. The *Levenhagen*, *Corizon I*, and *Corizon II* Cases

In 2011 Mr. Vermillion filed a lawsuit alleging that he had been wrongfully transferred to the Westville Super Max facility and placed in long-term solitary confinement—*Vermillion v. Levenhagen*, No. 1:15-cv-605-RLY-TAB (S.D. Ind.) ("*Levenhagen*"); *see also* dkt. 110 at 2, 4. On May 22, 2018, this Court denied in part the defendants' summary-judgment motion in that case. *Levenhagen*, dkt. 214.

In 2016, Mr. Vermillion filed a lawsuit against the IDOC's contracted health service providers—*Vermillion v. Corizon Health, Inc.*, No. 1:16-cv-1723-JMS-DLP ("*Corizon I*"); *see also* dkt. 110 at 4.

In 2017, Mr. Vermillion filed a lawsuit against the IDOC's health service contractors and IDOC employees, including Camay Francum, who is Mr. Francum's wife—*Vermillion v. Corizon Health, Inc*, No. 1:17-cv-961-RLY-MPB (S.D. Ind.) ("*Corizon II*");[2] *see also* dkt. 110 at 4.

None of the defendants in *Levenhagen*, *Corizon I*, or *Corizon II* are defendants in this case, and Mr. Vermillion has never spoken to any of the

---

[2] The Court takes judicial notice of the filings in *Levenhagen, Corizon I,* and *Corizon II.*

defendants in this case about those cases or heard them speak about the cases. Vermillion Deposition, Dkt. 98-1 at 28, 46.[3]

### C. Investigation and Removal from Law Library Job

Mr. Vermillion worked in Pendleton's law library from February 2014 until July 2018. Dkt. 110 at 2. During this time, he consistently received "outstanding" employment performance reports. *Id.*

On June 28, 2018, IDOC's Internal Affairs Division was notified about suspicious packages of legal mail delivered to Pendleton. Dkt. 98-2 ¶ 6.[4] The packages were labeled as if they had been sent from the Allen County Department of Child Services. *Id.* Mr. Turney was assigned as the investigator on the case. *Id.* ¶ 7. On June 28, Mr. Houchins and Mr. Turney interviewed the two inmates to whom the suspicious packages had been addressed—William Eberly and Hozyfa Sultan. *Id.* ¶ 8.

According to Mr. Houchins and Mr. Turney, during the investigation a K-9 detection dog searched the library and indicated on several pieces of paper for the presence of synthetic drugs. *Id.* ¶ 11; dkt. 98-3 ¶¶ 8–11.[5] A cell phone and charger were also found in the work area of inmate Michael Lane. Dkt. 98-3 ¶ 10.

---

[3] Citations to Mr. Vermillion's deposition are to the page numbers assigned when it was filed electronically in CM/ECF.

[4] Mr. Vermillion disputes that the packages were "suspicious" based on his review of photographs of the packages. Dkt. 110 at 8. Regardless of how Mr. Vermillion views the packages, it's undisputed that Internal Affairs was notified that suspicious packages had been delivered.

[5] Mr. Vermillion disputes that drug-tainted paperwork was ever found. Dkt. 109 at 26. When he asked for documents about the K-9 search and any lab reports confirming tests for the presence of synthetic drugs in discovery, Defendants responded that no such paperwork existed. *Id.*; *see also* dkt. 110 at 7–8.

The allegedly drug-laced papers were found in the area where three inmates worked—Edward LeFlore, Kerry Silvers, and Mr. Vermillion. Dkt. 98-2 ¶ 11; dkt. 98-3 ¶ 11. Because the papers were found in an area where several inmates worked, Mr. Turney and Mr. Houchins could not determine to whom the drug-laced papers belonged. Dkt. 98-3 ¶ 11. On July 5, Mr. Houchins emailed law library staff members telling them that Mr. Lane, Mr. LeFlore, Mr. Silvers, and Mr. Vermillion were not to be allowed to return to the law library to work. Dkt. 98-2 ¶ 12.

Mr. Francum did not direct Mr. Houchins or Mr. Turney to conduct the investigation. Dkt. 98-2 ¶ 14; dkt. 98-3 ¶ 15. Mr. Francum was not involved in the investigation in any capacity, and neither Mr. Houchins nor Mr. Turney ever spoke to Mr. Francum about the investigation. Dkt. 98-2 ¶ 13–14; dkt. 98-3 ¶ 16.

Mr. Vermillion has designated evidence showing that he did not work in the same room or area as Mr. LeFlore and Mr. Silvers, where the drugs were found. Declaration of Jason Hubbell, dkt. 110 at 14. In addition, inmate Jason Hubbell worked closer to Mr. Lane, Mr. LeFlore, and Mr. Silvers than Mr. Vermillion and was not removed from his law library job. *Id.*[6] Moreover, inmate

---

[6] Defendants object that Mr. Hubbell's testimony on this point should be disregarded under the "sham affidavit" rule because Mr. Vermillion testified at his deposition that he worked in the same area as Mr. Hubbell. Dkt. 116 at 18 (citing dkt. 98-1 at 60). The "sham affidavit" rule does not bar Mr. Hubbell's testimony because he has not made a prior statement under oath that is contradicted by his summary-judgment declaration. *See James v. Hale*, 959 F.3d 307, 317 (7th Cir. 2020) (district court erred in excluding plaintiff's mother's affidavit under the sham affidavit rule because she did not testify in a deposition nor did she make any other sworn statements about the events before making out her affidavit).

6

Stuart Kennedy worked in the same area as Mr. Vermillion but was not removed from his job. Declaration of Stuart Kennedy. *Id.* at 12.

When Mr. Vermillion reported to work on July 5, his supervisor told him that Internal Affairs had directed him to tell Mr. Vermillion that his law library employment had been terminated. Dkt. 110 at 4. Mr. Vermillion talked to supervisor Larry Fowler about the situation the next day. Mr. Fowler told him that Internal Affairs said they could not provide any information, but Mr. Vermillion would be contacted soon. *Id.* at 5. Mr. Vermillion was never interviewed or contacted about the matter. *Id.*

Mr. Houchins testified that at the time of the investigation, search, and email that prevented Mr. Vermillion to returning to the law library, he was not aware of Mr. Vermillion being successful in any lawsuit or being in the process of filing any new lawsuits. Dkt. 98-2 ¶ 16. As for Mr. Turney, at the time of the investigation and search, he did not have any knowledge of any of Mr. Vermilion's court filings or court proceedings. Dkt. 98-3 ¶ 18.

On July 24, Mr. Vermillion sent a letter to Assistant Superintendent Alsip regarding his termination and asking for Mr. Alsip to intervene. Dkt. 110 at 5; dkt. 50-1 at 31–32. Mr. Alsip did not respond. Dkt. 110 at 5. On September 4, 2018, Mr. Vermillion sent a letter to Superintendent Zatecky regarding his termination and asking for Superintendent Zatecky to intervene. *Id.*; dkt. 50-1 at 35–36. Superintendent Zatecky did not respond. Dkt. 110 at 5. At his deposition, Mr. Vermillion testified that neither Superintendent Zatecky nor

7

Assistant Superintendent Alsip took any retaliatory action against him; rather, his complaint was that they failed to intervene on his behalf. Dkt. 98-1 at 32.

### D. Post-Removal Employment

After Mr. Vermillion was removed from his law library job, he was placed on idle status. Dkt. 98-1 at 26. He later found a job as a tutor with the same pay rate as his law library job. *Id.* at 17, 51. After working in that job for about a year, he became a suicide companion, which paid less than the law library job. *Id.* Although he earned the same pay rate as a tutor, he no longer had as much access to the law library as he did when he worked there. Before his removal, he was in the law library up to nine hours each working day. *Id.* at 21. After his removal, he could only go to the law library about an hour a day. *Id.* at 42.

Mr. Vermillion returned to a law library job in October 2020. *Id.* at 17.

## III.
## Legal Standard

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## IV.
## Discussion[7]

Defendants argue that they are entitled to summary judgment because Mr. Vermillion has not designated evidence sufficient to succeed on his

---

[7] Mr. Vermillion filed a surreply. Dkt. 117. Under Southern District of Indiana Local Rule 56-1(d), a party opposing a summary-judgment motion may file a surreply brief "only if

retaliation claims and, regardless, they are entitled to qualified immunity. *See generally* dkt. 99. In response, Mr. Vermillion argues that Defendants Francum, Houchins, and Turney retaliated against him for previous litigation activity by having him removed from his law library job. *See generally* dkt. 109. He further alleges that Defendants Alsip and Zatecky retaliated against him by turning a blind eye to his complaints of retaliation. *Id.*

To succeed on his First Amendment retaliation claim, Mr. Vermillion must designate evidence from which a reasonable jury could conclude that: (1) Mr. Vermillion engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in Defendants' decision to take the

---

the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." If a surreply is allowed, it "must be limited to the new evidence and objections." S.D. Ind. L.R. 56-1(d). Defendants did not cite new evidence in their reply, although they did make the following arguments about the admissibility of evidence Mr. Vermillion cited in his response: (1) Mr. Vermillion cannot rely on an entry from *Holleman v. Zatecky*, No. 1:14-cv-671-TWP-DML (S.D. Ind.) (discussed below), because such reliance amounts to impermissible character evidence under Federal Rule of Evidence 404(b); (2) Mr. Vermillion's attempts to bolster his own credibility through declarations from fellow inmates are inadmissible at summary judgment as untimely "witness bolstering"; (3) Mr. Vermillion's reliance on orders issued in *Paschall v. Coats*, No. 1:15-cv-621-SEB-MPB (S.D. Ind.), and *Littler v. Martinez*, No. 2:16-cv-472-JMS-DLP (S.D. Ind.), is improper because those orders are not relevant to this case and inadmissible to establish any Defendant's character for truthfulness under Federal Rule of Evidence 608(b)(1); (4) the statement of a non-party officer referenced in Mr. Vermillion's summary-judgment response is inadmissible hearsay; and (5) portions of the declarations of inmates Stuart Kennedy and Jason Hubbell are inadmissible under the "sham affidavit" rule, and other portions of those declarations amount to inadmissible hearsay. Dkt. 116. The Court considers Mr. Vermillion's surreply to the extent it addresses these limited points but otherwise disregards it because it goes beyond the scope authorized by Local Rule 56-1.

allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022).

Defendants do not dispute that Mr. Vermillion engaged in protected First Amendment activity by litigating the *Levenhagen*, *Corizon I*, and *Corizon II* cases, so the outcome of Defendants' summary judgment motion turns on the second and third elements.

### A. Defendant Francum

Mr. Vermillion testified that he was suing Mr. Francum because Mr. Francum was the head of Internal Affairs and, in that role, directed Mr. Houchins and Mr. Turney to fabricate an investigation and reason to remove Mr. Vermillion from his law library job. Dkt. 98-1 at 3. Mr. Francum argues there is no evidence that he was personally involved with Mr. Vermillion's removal from his law library job. Dkt. 99 at 17–18. He points to Mr. Houchins's and Mr. Turney's declarations stating that Mr. Francum did not: direct the investigation of Mr. Vermillion; participate in the investigation; speak to Mr. Houchins or Mr. Turney about the investigation; or work at Pendleton at the time. *Id.*

Mr. Vermillion responds that it doesn't matter whether Mr. Francum worked at Pendleton—Mr. Francum may have been involved with the investigation and termination as an "Internal Affair Investigator for the IDOC Central Office." Dkt. 109 at 16. Mr. Vermillion also contends that Mr. Francum has not provided an affidavit attesting that he was not involved in the investigation. *Id.* He also argues that Mr. Francum's arguments are based solely on the declarations of Mr. Houchins and Mr. Turney, who "are not qualified to

11

testify as to what Francum *might* know, of what he *might* have been involved in." *Id.* As a result, he argues, Defendants' summary-judgment motion was not properly supported as to the claims against Mr. Francum. *Id.* at 17. Last, Mr. Vermillion contends that he has designated evidence showing that Mr. Francum "engaged in the exact same conduct against another [Pendleton] prisoner, such that would enable a reasonable fact finder to conclude that Francum's herein-complained of conduct was an intentional act and not an accident." *Id.* at 16–17.

Government officials may only be liable under § 1983 for their own misconduct. *E.g., Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). To survive summary judgment, then, Mr. Vermillion must designate evidence from which a reasonable finder of fact could conclude that Mr. Francum was personally involved in the decision to remove him from his law library position.

Mr. Vermillion has not met his burden. In support of his claim against Mr. Francum, Mr. Vermillion points to the fact that, at one time before the events giving rise to this suit, Mr. Francum allegedly engaged in similar conduct. *See* dkt. 109 at 16–17 (citing *Holleman v. Zatecky*, No. 1:14-cv-671-TWP-DML (S.D. Ind. July 28, 2017)). But the fact that Mr. Francum worked on a law library investigation in 2014, *see Holleman*, dkt. 44-8 at 1–2, does not show that he worked on the investigation in 2018 that led to Mr. Vermillion's removal from his law library job. And Mr. Vermillion has not designated evidence that would allow a reasonable jury to find, not speculate, that Mr. Francum played any role here.

Defendants designate evidence showing that Mr. Francum was no longer in an investigatory role at the time of the 2018 law library investigation. *See*

dkts. 98-2 ¶ 15 and 98-3 ¶ 17 (stating that Mr. Francum worked in technology at the IDOC's Central Office at the time). Moreover, Mr. Houchins and Mr. Turney have personal knowledge of the investigation and the events leading up to Mr. Vermillion's removal from the law library position. As such, they are qualified to testify that Mr. Francum did not direct them to start the investigation, they did not talk to Mr. Francum during the investigation, and Mr. Francum did not participate in the investigation. Though it may have provided further support to his position, Mr. Francum was not required to submit his own declaration, too.

Because Mr. Vermillion has failed to designate evidence from which a reasonable jury could conclude that Mr. Francum was personally involved in his removal from his law library job, Defendants' summary-judgment motion is **granted** as to Mr. Vermillion's claims against Mr. Francum.[8] *See Colbert*, 851 F.3d at 657.

### B. Defendants Houchins and Turney

To make out a *prima facie* case of retaliation, Mr. Vermillion must designate evidence allowing the reasonable inference that, among other things, his protected activity was a motivating factor in Defendants' decision to take the allegedly retaliatory action. *Jones*, 27 F.4th at 1284. "The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous

---

[8] Because no designated evidence supports Mr. Vermillion's claim that Mr. Francum violated his First Amendment rights, the Court need not address qualified immunity and the argument that those rights were not clearly established.

13

statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

Here, Mr. Houchins and Mr. Turney contend that Mr. Vermillion cannot show that his prior litigation motivated the decision to remove him from his law library job because he has not designated evidence showing that at the time of the investigation, they knew about his success in the *Levenhagen* lawsuit, or that they knew of the *Corizon I* or *Corizon II* lawsuits. Dkt. 99 at 21. Mr. Vermillion responds with a host of arguments that he says shows that his protected activity was a motivating factor for his removal from his law library job:

- There was suspicious timing: he was removed from his position six weeks after he prevailed on summary judgment in *Levenhagen*.
- The reason for removing him from his job was factually baseless and pretextual: there was no evidence that a K-9 ever searched the law library, that drug-soaked papers were found, that any papers were ever tested for the presence of drugs, that any papers were to be given to law library workers, or that law library workers were going to use their access to move the papers around the facility.

14

- His termination was motivated by retaliatory animus: for more than a decade before he was removed from his job, he had outstanding employment performance reports.

- After he was removed from his job, an internal affairs investigator asked him, "Are you the Vermillion that filed a lawsuit against Tom Francum's wife?"

- He was treated differently than others: Mr. Vermillion was removed from his position, while other inmate workers who had not filed lawsuits but worked in the same room as him were not removed.

- This has happened before: in a previous case, *Holleman*, discussed above, Superintendent Zatecky, Assistant Superintendent Alsip, and Mr. Francum allegedly had an inmate removed from his law library job in retaliation for his successful litigation efforts.

Dkt. 109 at 25–30.

Mr. Vermillion admits, however, that he has no evidence that Mr. Houchins and Mr. Turney knew about his litigation history. Dkt. 98-1 at 50. That's a big problem because Mr. Vermillion has the burden of designating evidence from which a jury could reasonably conclude that his litigation was a motivating factor in his termination. As the Seventh Circuit stated in another retaliation case, "[i]f Monk did not know that Cusson–Cobb was a Republican, he could not have fired her because she was a Republican." *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). The same follows here: if Mr. Houchins and Mr. Turney did not *know* about Mr. Vermillion's litigation

15

activities, they could not have removed him because of it. *See id.* And that's the case regardless of the suspicious timing or the other circumstantial evidence that Mr. Vermillion has designated *supra*. *Stagman*, 176 F.3d at 1001 ("Speculation of suspicious timing alone is not enough to create a reasonable inference of knowledge."); *Cusson-Cobb*, 953 F.2d at 1081 (plaintiff's conclusory statement that her political affiliation was "well known" was too speculative to create genuine issue of material fact as to whether defendant knew about her political affiliation); *cf. Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 513 (7th Cir. 2021) (to show that a decision-maker had knowledge of protected activity, it is not sufficient to show that decision-maker could have or even should have known about the activity).

Accordingly, Defendants' motion for summary judgment is **granted** as to Mr. Vermillion's claims against Mr. Houchins and Mr. Turney.[9]

### C. Defendants Zatecky and Alsip

Defendants Zatecky and Alsip argue that they are entitled to summary judgment because there is no evidence that they were personally involved in any allegedly retaliatory actions, and they cannot be held vicariously liable for any actions taken by other defendants. Dkt. 99 at 18. Mr. Vermillion responds that his argument is not based on a theory of vicarious liability. Instead, his claims against these defendants are based on the fact that he wrote to them about his

---

[9] Because no designated evidence supports Mr. Vermillion's claim that Mr. Houchins or Mr. Turney violated his First Amendment rights, the Court need not address qualified immunity and their argument that those rights were not clearly established.

removal from his law library position and they "turned a blind eye" to his situation. Dkt. 109 at 17.[10]

As explained above, though, Mr. Vermillion has failed to meet his burden that would allow a reasonable jury to find that Mr. Francum, Mr. Houchins, or Mr. Turney retaliated against him. Mr. Vermillion cannot, then, prevail on his "blind eye" theory because he has not come forward with sufficient evidence to show that there was any retaliation to which Superintendent Zatecky and Assistant Superintendent Alsip could turn a blind eye. *See, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (allowing for "blind eye" liability only when an official knows about unconstitutional conduct). Accordingly, Defendants' summary-judgment motion is **granted** as to Mr. Vermillion's claims against them.[11]

## V.
## Conclusion

For the reasons stated above, Mr. Vermillion's motion for judicial notice, dkt. [111], is **granted** to the extent stated in Section I, above; his motion to strike,

---

[10] Mr. Vermillion argues that Superintendent Zatecky and Assistant Superintendent Alsip have waived any argument about his "blind eye" theory by failing to raise it in their opening brief. Dkt. 109 at 17. But, as Superintendent Zatecky and Assistant Superintendent Alsip state, they were not required to anticipate Mr. Vermillion's argument about "turning a blind eye" to his situation. Dkt. 116 at 8. Thus, the Court will consider their arguments.

[11] Because no designated evidence supports Mr. Vermillion's claim that Superintendent Zatecky and Assistant Superintendent Alsip violated his First Amendment rights, the Court need not address qualified immunity and their argument that those rights were not clearly established.

dkt. [112], is **denied**; and Defendants' summary-judgment motion, dkt. [97], is **granted**.

    Final judgment will enter by separate entry.

**SO ORDERED.**

Date: 8/30/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JAY F. VERMILLION
973683
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel of Record via CM/ECF