UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JAY F. VERMILLION,                          )
                                            )
                    Plaintiff,              )
                                            )
         v.                                 )      No. 1:20-cv-01674-JPH-KMB
                                            )
TOM FRANCUM,                                )
CHARLES HOUCHINS,                           )
BROCK TURNEY,                               )
JEFF MALOTT,                                )
DUANE ALSIP,                                )
DUSHAN ZATECKY,                             )
                                            )
                    Defendants.             )

**ORDER DENYING MOTION TO RECONSIDER, ALTER, OR AMEND
JUDGMENT AND MOTION TO STRIKE**

Plaintiff Jay Vermillion alleged that Defendants fired him from his law

library job in retaliation for engaging in protected First Amendment activity.

Defendants Francum, Houchins, Turney, Alsip, and Zatecky moved for

summary judgment in their favor.  The Court granted the motion and entered

final judgment.[1]  Dkts. 122, 123.  Now before the Court is Mr. Vermillion's

motion to reconsider its Order granting summary judgment in Defendants'

favor.  Dkt. [124].  He also filed a motion to strike Defendants' response to his

motion to reconsider.  Dkt. [126].  For the reasons stated below, the motions

are **denied**.

---

[1] Earlier in the case, the Court dismissed Mr. Vermillion's claims against Defendant
Malott without prejudice.  Dkt. 57.  That decision is not at issue in Mr. Vermillion's
current motion to reconsider.

## I.     Motion to Strike

Mr. Vermillion moves to strike Defendants' response to his motion to reconsider, arguing that Federal Rule of Civil Procedure 59 does not allow for a response and that the response consists of "nothing but sycophantic recitations of the court's challenged conclusions." Dkt. 126. Mr. Vermillion's complaints about the contents of the response go to its weight and do not constitute a reason to strike it. And the argument about Rule 59 not allowing a response is baseless. Rule 59 does not address whether a response may be filed to a motion to reconsider. Moreover, Southern District of Indiana Local Rule 7-1 permits responses to motions. *See* S.D. Ind. L.R. 7-1 (c)(3) (responses to motions other than those enumerated in the rule are due within 14 days). The motion to strike, dkt. [126], is **denied**.

## II.     Motion to Reconsider

### A. Legal Standard

Mr. Vermillion seeks relief under Rule 59(e), which allows a motion to alter or amend a judgment within 28 days after the entry of the judgment. "Relief under Rule 59(e) is an 'extraordinary remedy reserved for the exceptional case.'" *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 463 (7th Cir. 2021) (quoting *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015)). A Rule 59(e) motion "may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). It "does not allow a party to introduce new evidence or advance arguments that could and should

2

have been presented to the district court prior to the judgment." *A&C Constr.*
*& Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020)
(quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir.
2000)).

### B. Discussion

Mr. Vermillion alleges that Defendants removed him from his law library
job in retaliation for engaging in protected First Amendment activity.
Specifically, Mr. Vermillion was removed from his law library job in 2018 after
an investigation allegedly found drug-soaked papers in an area of the law
library where inmate clerks worked, albeit not in the room where Mr.
Vermillion worked.  Mr. Vermillion contends no drug-soaked papers were ever
found.  Instead, he argues, the investigation was a sham and he was really
removed from his law library job because Defendants wanted to retaliate
against him for his success in an earlier lawsuit (the *Levenhagen* case) and
prevent him from succeeding in two other lawsuits he was pursuing at the time
(the *Corizon I* and *Corizon II* cases).  *See generally* dkt. 122.  The Court
discusses Mr. Vermillion's arguments as to the various defendants, below.

### 1. Defendant Francum

The Court granted summary judgment to Defendant Francum because
Defendants designated evidence—declarations from Defendants Houchins and
Turney—that Mr. Francum was not involved with the investigation or decision
to remove Mr. Vermillion from his law library job and Mr. Vermillion did not
designate any contrary evidence.  Dkt. 122 at 11–13.

In his motion to reconsider, Mr. Vermillion argues that the Court erred because record evidence casts doubt on the credibility of Mr. Houchins and Mr. Turney.  Dkt. 124 at 8–10.  Specifically, he contends that circumstantial evidence casts doubt on Mr. Houchins's and Mr. Turney's credibility and accuses the Court of improperly resolving the credibility question against him and disregarding his circumstantial evidence.  *Id.* at 10.  Most of that evidence relates to Mr. Vermillion's contention that Mr. Houchins's and Mr. Turney's proffered reason for his removal from his law library job was false: allegedly suspicious timing, the lack of written documentation associated with the alleged search of the law library and alleged discovery of drug-soaked papers, Mr. Vermillion's exemplary conduct and performance history prior to his removal from his law library job, and the fact that other inmates who did not engage in protected First Amendment activity were not removed from their jobs. *Id.* at 8–10.  He also points to another case—*Holleman v. Zatecky*, No. 1:14-cv-671-TWP-DML (S.D. Ind.)—in which Mr. Francum allegedly retaliated against another inmate by trumping up a fake investigation to remove him from his law library job in 2014—some four years before Mr. Vermillion was removed from his law library job.  *Id.* at 8–9.  Finally, he points to the fact that, after he was removed from his job, an internal affairs investigator asked him, "Are you the Vermillion that filed a lawsuit against Tom Francum's wife?"  *Id.* at 9.

In response, Defendants argue that the Court properly concluded that Mr. Vermillion did not designate evidence raising a question of fact as to whether Mr. Francum was involved in the decision to remove him from his law

library job.  Dkt. 125.  They contend that the Court is obliged to accept Mr. Houchins's and Mr. Turney's declaration statements that Mr. Francum was not involved as true unless Mr. Vermillion designates evidence from which a reasonable jury could conclude that he was involved.  *Id.*

The Court agrees.  The Court did not grant summary judgment in Mr. Francum's favor because it found Mr. Houchins and Mr. Turney to be more credible than Mr. Vermillion.  It granted judgment in Mr. Francum's favor because Defendants designated admissible evidence—Mr. Houchins's and Mr. Turney's declarations—that Mr. Francum was not involved in the decision to remove Mr. Vermillion from his law library job, and Mr. Vermillion did not designate any evidence raising a genuine dispute of fact as to that issue.  Dkt. 122 at 12–13.

Mr. Vermillion insists that he designated circumstantial evidence that Mr. Houchins and Mr. Turney are not credible, most of it relating to his contention that their proffered reason for his removal from his law library job is false.  But none of that evidence suggests that Mr. Francum was involved in the removal.  Mr. Vermillion cannot avoid summary judgment just by questioning Mr. Houchins's and Mr. Turney's credibility.  *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper."); *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406

(7th Cir. 1998) ("[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.").

As the Court explained in granting summary judgment for Mr. Francum, Mr. Vermillion needs evidence that would allow a reasonable jury to find, not speculate, that Mr. Francum played a role in his removal from his law library job. Dkt. 122 at 12. He hasn't designated any such evidence. From Mr. Vermillion's designated evidence, a jury could find that Mr. Francum retaliated against another inmate years earlier and that an internal affairs investigator asked Mr. Vermillion if he was the person who sued Mr. Francum's wife. Those facts—whether considered alone, together, or in combination with any of Mr. Vermillion's other designated evidence—do not permit a reasonable inference that Mr. Francum was involved in the decision to remove Mr. Vermillion from his law library job.

## 2. Defendants Houchins and Turney

Mr. Vermillion alleges that Mr. Houchins and Mr. Turney removed him from his law library job in retaliation for his success in the *Levenhagen* case and to prevent him from succeeding in the *Corizon I* and *Corizon II* cases. The Court granted summary judgment in their favor, explaining:

> Here, Mr. Houchins and Mr. Turney contend that Mr. Vermillion cannot show that his prior litigation motivated the decision to remove him from his law library job because he has not designated evidence showing that at the time of the investigation, they knew about his success in the *Levenhagen* lawsuit, or that they knew of the *Corizon I* or *Corizon II* lawsuits. Dkt. 99 at 21. Mr. Vermillion responds with a host of arguments that he says shows that his protected activity was a motivating factor for his removal from his law library job:

- There was suspicious timing: he was removed from his position six weeks after he prevailed on summary judgment in *Levenhagen.*

- The reason for removing him from his job was factually baseless and pretextual: there was no evidence that a K-9 ever searched the law library, that drug-soaked papers were found, that any papers were ever tested for the presence of drugs, that any papers were to be given to law library workers, or that law library workers were going to use their access to move the papers around the facility.

- His termination was motivated by retaliatory animus: for more than a decade before he was removed from his job, he had outstanding employment performance reports.

- After he was removed from his job, an internal affairs investigator asked him, "Are you the Vermillion that filed a lawsuit against Tom Francum's wife?"

- He was treated differently than others: Mr. Vermillion was removed from his position, while other inmate workers who had not filed lawsuits but worked in the same room as him were not removed.

- This has happened before: in a previous case, *Holleman*, discussed above, Superintendent Zatecky, Assistant Superintendent Alsip, and Mr. Francum allegedly had an inmate removed from his law library job in retaliation for his successful litigation efforts.

Mr. Vermillion admits, however, that he has no evidence that Mr. Houchins and Mr. Turney knew about his litigation history. Dkt. 98-1 at 50. That's a big problem because Mr. Vermillion has the burden of designating evidence from which a jury could reasonably conclude that his litigation was a motivating factor in his termination.

Dkt. 122 at 14–15 (internal citation omitted).

Mr. Vermillion contends that the Court misapprehended his argument because he did not offer a "host" of arguments as to why his protected First Amendment activity was a motivating factor in his removal from his law library

job.  Dkt. 124 at 11.  Nor did he admit that he had no evidence that Mr. Houchins and Mr. Turney knew about his litigation history.  *Id.* at 12.  Instead, he admitted only that he had no *written* evidence that they knew about his litigation history.  *Id.*  And he was not offering a "host" of arguments—he was offering a collection of circumstantial evidence from which a reasonable jury could conclude that Mr. Houchins and Mr. Turney were lying about not knowing about his litigation history.  *Id.* at 11.  As he did with respect to his claims against Mr. Francum, he contends that the Court erred by believing Mr. Houchins and Mr. Turney instead of him and failing to construe all evidence in the light most favorable to him, as it was obliged to do.  *Id.* at 10–12.

Defendants respond that the Court was correct to grant summary judgment in Mr. Houchins's and Mr. Turney's favor because Mr. Vermillion designated no evidence from which a reasonable jury could conclude that they knew about the *Levenhagen* or *Corizon I or II* cases at the time he was removed from his law library job.  Dkt. 125.  They also argue he cannot avoid summary judgment simply by accusing Mr. Houchins and Mr. Turney of lying.  *Id.*

The Court agrees.  No one disputes that Mr. Houchins and Mr. Turney cannot have retaliated against Mr. Vermillion for his participation in the *Levenhagen*, *Corizon I*, or *Corizon II* suits if they did not know about them at the relevant times.  At summary judgment, they argued that Mr. Vermillion did not have any evidence they had such knowledge.  To survive summary judgment, Mr. Vermillion had to designate evidence from which a reasonable jury could conclude to the contrary.  He did not.  Regardless of whether Mr.

Vermillion's proffered circumstantial was intended as a "host" of separate pieces of evidence or a collection to be considered as a whole, none of that evidence—whether considered alone or in combination—would allow a reasonable jury to conclude that Mr. Houchins and Mr. Turney knew about the relevant cases at the time of his removal from his law library job.

Likewise, even if Mr. Vermillion admitted only to having nothing in *writing* showing that they knew about his litigation history, he still needs evidence that they *did* know about it, and he has not designated any such evidence. Mr. Vermillion believes that his collection of circumstantial evidence casts doubt on Mr. Houchins's and Mr. Turney's credibility, which could lead a jury to conclude that they are lying about not knowing about his litigation history. But as explained, he cannot avoid summary judgment simply by questioning Mr. Houchins's and Mr. Turney's credibility. He needs evidence that they knew about the relevant lawsuits, and he hasn't designated any.

### 3. Defendants Zatecky and Alsip

Mr. Vermillion offers no specific arguments as to why the Court erred in granting summary judgment in favor of Defendants Zatecky and Alsip. In addition, the Court observes that it granted summary judgment in their favor because Mr. Vermillion was claiming that they turned a "blind eye" to the fact that Mr. Francum, Mr. Houchins, and Mr. Turney were retaliating against him and there was no evidence of any retaliation to which they could turn a blind eye. Dkt. 122 at 17. As explained above, Mr. Vermillion has not shown that the Court erred in granting summary judgment to Mr. Francum, Mr. Houchins,

and Mr. Turney, so that conclusion is necessarily true as to his claims against
Defendants Zatecky and Alsip, too.

### 4. Labeling Mr. Vermillion a "Snitch"

Finally, Mr. Vermillion contends that the Court committed reversible
error when it stated, "Mr. Vermillion has designated evidence showing that he
did not work in the same room or area as Mr. LeFlore and Mr. Silvers, where
the drugs were found." Dkt. 124 at 12 (citing dkt. 122 at 6). He demands that
the Court retract this statement because he has "never stated, averred,
implied, or even suggested that there were drugs in the work area of LeFlore
and Silvers," the statement is "outside the adversarial issues presented by the
parties," and the statement "portrays [him] as a snitch," as evidenced by the
fact some inmates who have seen the Court's summary judgment order are
"questioning [his] solidity." *Id.* at 12–13.

To be clear, the Court's order states "[a]ccording to Mr. Houchins and Mr.
Turney, . . . [a] cell phone and charger were also found in the work area of
inmate Michael Lane. The allegedly drug-laced papers were found in the area
where three inmates worked—Edward LeFlore, Kerry Silvers, and Mr.
Vermillion." Dkt. 122 at 5–6 (citations omitted). Nothing in the Court's order
suggests that Mr. Vermillion reported drugs being found or that he accused
other inmates of possessing drugs. On the contrary, the order stated,
"Mr. Vermillion disputes that drug-tainted paperwork was ever found." Dkt.
122 at 5 n.5.

### III.    Conclusion

For the reasons stated above, the motion to reconsider, dkt. [124], and

the motion to strike, dkt. [126], are **denied**.

**SO ORDERED.**


Date: 9/11/2024

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JAY F. VERMILLION
973683
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel